CREEKMORE v. SCOTT.

Opinion delivered September 30, 1929.

*S. W. Woods,* for appellant.

*J. M. Shinn* and *Henry Youngblood,* for appellee.

HART, C. J. Appellee, Julia Scott, recovered judgment in the circuit court for damages against appellants, Hench Creekmore and Claude Creekmore, for the sum of $5,000, and caused an execution to be issued thereon, which was by the sheriff levied upon two farms owned by appellants. Hench Creekmore claimed one of the farms, which comprised ninety acres, as his homestead, and filed his schedule of exemptions with the clerk of the circuit court. Claude Creekmore owned one of the farms, comprising thirty acres, and filed his schedule of exemptions with the clerk, claiming it as his homestead. The circuit clerk refused to issue a supersedeas staying the sale under the execution, and each of the appellants appealed to the circuit court. The circuit court heard the application of each appellant for a supersedeas upon the evidence adduced at the trial, and refused to grant the same. The case is here on appeal.

According to the evidence adduced by appellee, Hench Creekmore had not lived on his farm for more than two years before the issuance of the execution, and Claude Creekmore had not lived on his farm for more than six years before the issuance of the execution. Each one of the appellants had allowed his farm to become run down and the house on it to become badly out of repair. No one occupied the house on either farm, and no one cultivated the land. Claude Creekmore left his farm and went to Missouri, and lived there with his wife and children. Hench Creekmore lived with his mother on his farm, and carried her to his new home in Carroll County when he left his home place.

Claude Creekmore admitted that he voted in Missouri for President at the last presidential election, but testified that he never abandoned his homestead, but intended to return to it as soon as he was able to do so. He claimed that he had left his homestead because of financial trouble, and never intended to permanently abandon it. It was shown by one witness that Hench Creekmore had testified before the clerk, when he filed

his schedule of exemptions, that he had voted one time in Carroll County since he left his home. Hench Creekmore denied this, however, and testified that he never abandoned his homestead, but intended to return to it as soon as he could arrange to do so. Each one of them admitted that his property had been assessed at his new place of abode after he had left his homestead, but insisted that his intention was to return to his homestead as soon as he could arrange his business affairs.

The circuit court made a general finding in favor of appellee, and it was adjudged that the application of each appellant for a supersedeas upon his schedule filed should be refused, and that proceedings under the execution should go on as if no application for a supersedeas had been made. This was tantamount to a finding that each appellant had abandoned his homestead and that the same was subject to the execution which had been levied upon it.

This court has uniformly held that an abandonment of a homestead is almost, if not entirely, a question of intention which must be determined from the facts and circumstances attending each case. The court has further held that a removal from the homestead may be caused by necessity, or for business purposes, and that, if the owner has an unqualified intention to preserve it as a homestead and to return to it, his removal cannot result in the abandonment of the land as a homestead. *Gazola* v. *Savage,* 80 Ark. 249, 96 S. W. 981; *Caldcleugh* v. *Caldcleugh,* 158 Ark. 224, 250 S. W. 324, and cases cited.

This court has held, however, that the abandonment of a homestead may be proved by conduct, circumstances and actions, as well as by direct testimony. *Lilly* v. *Lilly,* 178 Ark. 324, 11 S. W. (2d) 765. Tested by this rule, we are of the opinion that there is substantial evidence to sustain the circuit court's finding that appellants intended to abandon their homesteads, and did abandon them. It is true that each of them denied that such was his intention, and testified that he intended to return to his home-

1116

stead; yet the court might have found that this testimony was overcome by the conduct of the appellants and the attendant circumstances. Neither of them attempted to rent out his homestead or to give any attention whatever to it. They permitted the houses to become badly out of repair, and did not attempt to have the land cultivated. One of them actually voted in the State of Missouri, which tends to show that he intended to live there and make that State his home. The court might have found that the other assessed his property in Carroll County, and, by the neglect of his homestead, which was near by, evinced an intention to abandon it and make his permanent home elsewhere.

It is well settled in this State that, where there is substantial evidence in support of the findings of the trial court, it will not be set aside on appeal; and this rule has been frequently applied in cases of this sort. *Robinson* v. *Swearengen,* 55 Ark. 55, 17 S. W. 365; *Gazola* v. *Savage,* 80 Ark. 249, 96 S. W. 981; *Harris* v. *Ray,* 107 Ark. 281, 154 S. W. 199; *Bank* v. *Brown,* 136 Ark. 517, 203 S. W. 579.

When the law makes the judge the trier of facts in cases to which the constitutional right of trial by jury does not extend, the findings of fact by the circuit judge are as conclusive on appeal as the verdict of a jury. *Jones* v. *Glidewell,* 53 Ark. 161, 13 S. W. 723, 7 L. R. A. 831; *Matthews* v. *Clay County,* 125 Ark. 136, 188 S. W. 564, and cases cited.

The result of our views is that the judgment of the circuit court was correct, and it will therefore be affirmed.