**Michael MANDEL, Appellant,**

v.

**UNITED STATES of America and Insurance Company of North America, Appellees.**

**No. 82–2053.**

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1983.

Decided Oct. 28, 1983.

Rehearing Denied Dec. 22, 1983.

J. Paul McGrath, Asst. Atty. Gen., W. Asa Hutchinson, U.S. Atty., Robert S. Greenspan, William Cole, Attys., Appellate Staff Civ. Div., Dept. of Justice, Washington, D.C., for appellee United States.

Bassett, Bassett & Bassett, W.W. Bassett, Jr., Fayetteville, Ark., for appellee Insurance Co. of North America, Inc.

Robert C. Compton, Brown, Compton & Prewett, Ltd., El Dorado, Ark., for appellant.

Before LAY, McMILLIAN and JOHN R. GIBSON, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Michael Mandel appeals from the district court's grant of summary judgment for defendants United States of America and Insurance Company of North America on his claim for damages under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Mandel was injured in Buffalo River National Park when he dived from a rock into a swimming hole and struck his head on a submerged rock in the Buffalo River. Mandel contends that the district court's granting of summary judgment was improper because (1) the Arkansas Recreational Use Statute does not apply to limit the liability of the United States, and (2) there is a genuine issue of material fact concerning whether the conduct of the defendants was willful or malicious. For the reasons stated below, we reverse the grant of summary judgment for the defendant United States and remand to the district court for trial. We affirm the grant of summary judgment as to defendant Insurance Company of North America.

In this appeal from a summary judgment, all facts must be viewed in the light most favorable to the party opposing the motion, giving that party the benefit of all reasonable inferences to be drawn from the facts. *Portis v. Folk Construction Co., Inc.*, 694 F.2d 520, 522 (8th Cir.1982).

Michael Mandel alleges that he was severely injured as the result of the willful and wanton conduct of the defendants. At

the time of the accident, August 1, 1981, Michael Mandel, then twenty-one years old, was employed as a camp counselor by the St. Louis Jewish Community Center Association. He visited the Buffalo River National Park in North Arkansas in mid-July 1981, in order to locate camping, hiking and swimming sites for a group of teenagers whom he was going to take camping at the park. According to Mandel's deposition testimony, Mandel approached a National Park Service Ranger at a point known as Kyles Landing on the Buffalo River, and asked where the ranger recommended that campers go swimming. The ranger recommended a swimming hole known as Mud Cave. Mandel testified that the Park Ranger, in recommending this particular swimming area, said "that is where everybody goes and that is where we recommend for you to go."

Approximately two weeks later Mandel and two friends returned to the Buffalo River National Park to visit the site where they proposed to take their camping group, and they went swimming at Mud Cave. While swimming, Mandel dived from a rock into the swimming hole. He struck his head on a large rock which was submerged four to five feet under the water, and which was not visible from the surface. Mandel broke his neck and was rendered quadriplegic by the accident.

The Mud Cave swimming hole was a popular swimming area for campers. Despite this fact, however, the National Park Service had never inspected it for potential safety hazards, and was unaware of the presence of the submerged rock until after the accident occurred. After Mandel was injured, a Park Service employee inspected the area and found the rock on which Mandel had struck his head.

The National Park Service was aware of the danger of submerged rocks, as evidenced by their brochures warning campers to be careful in diving. They did not, however, post any type of warning at Mud Cave, and the Ranger who spoke to Mandel and recommended the Mud Cave swimming hole did not indicate any possible dangers.

Mandel contends that the action of the Park Ranger in recommending the Mud Cave area as the place to swim, when in fact the Ranger was unaware of the hidden danger of submerged rock, constituted willful and wanton conduct resulting in his injury. Mandel argues that, had the government acted properly and discovered the rock before recommending the swimming hole, they could have either warned Mandel verbally or could have posted a sign, which would have prevented his injury.

■ In reviewing a district court decision granting a motion for summary judgment, we apply the same standard as the trial court. *Portis, supra,* 694 F.2d at 522.

Summary judgment should be granted only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Ralph's Distributing Co. v. AMF, Inc.,* 667 F.2d 670, 672 (8th Cir.1981). Summary judgment is an extreme remedy and is not to be granted unless the moving party has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances. *Portis, supra,* 694 F.2d at 522.

This appeal raises the questions of whether the Arkansas Recreational Use Statute, Ark.Stat.Ann. Sections 50–1101 to 50–1107, is applicable to the United States in this context, and if it is, whether the conduct of the United States was willful or malicious.

### I.

■ The plaintiff argues that the Arkansas Recreational Use Statute [1] is not appli-

---

1. The Arkansas Recreational Use Statute provides:

    Except as specifically recognized by or provided in Section 6 (Sec. 50–1106) of this act, an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to

cable to the United States as a landowner. As support for his argument plaintiff cites *Miller v. United States,* 597 F.2d 614 (7th Cir.1979), a case decided under the Illinois recreational use statute.

We agree with the district court that *Miller* is inapposite to this case. The court's decision in *Miller* turned on the interplay between the Illinois recreational use statute and an Illinois licensing act. In *Miller,* the court found that the Illinois Recreational Use of Land and Water Areas Act[2] was inapplicable to the United States because another Illinois statute, the Recreational Area Licensing Act[3] specifically applied to the property in question. Since Arkansas has no statute equivalent to the Illinois Recreational Area Licensing Act which would apply here, *Miller* is not support for the argument that the Arkansas Recreational Use Statute does not apply to the United States.

Other Circuits have uniformly held that state recreational use statutes do apply to the United States. *See, e.g. Jones v. United States,* 693 F.2d 1299 (9th Cir.1982); *Simpson v. United States,* 652 F.2d 831 (9th Cir.1981); *Otteson v. United States,* 622 F.2d 516 (10th Cir.1980). Plaintiff argues forcefully, however, that the Arkansas Recreational Use Statute is not applicable to the United States since the purpose of the statute is to encourage private landowners

to "make land and water areas available to the public for recreational purposes,"[4] while the United States has an independent duty to maintain the national parks as public recreational areas.[5] Plaintiff's argument is basically that since the United States, through the National Parks Services, has already been given the duty of establishing land and waterways for public recreation and use, the Arkansas Recreational Use Statute offers no additional incentive and, therefore, is inapplicable.

We recognize the incongruity that results when the Recreational Use Statute is applied to the United States as landowner in relation to a national park. However, after reviewing the language of the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671–2680, under which plaintiff brings his claim, we conclude that the Arkansas Recreational Use Statute is applicable to the United States.

Under the Federal Tort Claims Act the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances...." 28 U.S.C. § 2674. There is no question that a private individual could take advantage of the limited liability provided by the Arkansas Recreational Use Statute; consequently, such protection is also available to the United States. "[T]he test established by the Tort Claims Act for

---

persons entering for such purposes. Ark. Stat.Ann. § 50–1103.

Except as specifically recognized by or provided in Section 6 (Sec. 50–1106) of this act, an owner of land who either directly or indirectly invites or permits without charge any person to use such property for recreational purposes does not thereby:

   (a) Extend any assurance that the premises are safe for any purpose.

   (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed.

   (c) Assume responsibility for or incur liability for any injury to person or property caused by an act or omission of such persons. Ark.Stat.Ann. § 50–1104.

**2.** Ill.Rev.Stat. ch. 70, § 31–37. Its provisions are very similar to the Arkansas Recreational Use Statute.

**3.** Ill.Rev.Stat. ch. 111½, §§ 761–785.

**4.** Ark.Stat.Ann. 50–1101.

**5.** According to 16 U.S.C. § 1 the purpose of the National Park Service "is to conserve the scenery and the natural and historic objects and the wild life therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."

The Act of Congress establishing the Buffalo River in Arkansas as a national river specifically states, "For the purposes of conserving and interpreting an area containing unique scenic and scientific features, and preserving as a free-flowing stream an important segment of the Buffalo River in Arkansas for the benefit and enjoyment of present and future generations, the Secretary of the Interior ... may establish and administer the Buffalo National River." 16 U.S.C. § 460m–8.

determining the United States' liability is whether a private person would be responsible for similar negligence under the laws of the State where the acts occurred." *Rayonier v. United States,* 352 U.S. 315, 319, 77 S.Ct. 374, 376, 1 L.Ed.2d 354 (1957). Applying this test the liability of the United States is limited by the Arkansas Recreational Use Statute to the same extent as the liability of a private person.

## II.

■ Although the Arkansas Recreational Use Statute limits a landowner's liability, a landowner is still liable for "wilful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity." Ark.Stat.Ann. § 50–1106. The district court held therefore that Mandel must show that defendants knew or should have known of the dangerous condition and the probability of injury. *Mandel v. United States of America,* 545 F.Supp. 907, 913 (W.D.Ark.1982).

In granting summary judgment for the defendants, the district court made several specific findings of fact, in apparent contradiction to Rule 56 of the Federal Rules of Civil Procedure. *See Burgert v. Union Pacific Railroad,* 240 F.2d 207, 210 (8th Cir. 1957). In particular it found that:

(1) neither defendant had knowledge of the submerged rock nor had reason to know of the existence of the submerged rock; (Finding number 11 in district court opinion.)

(2) neither defendant had reason to believe that a foreseeable injury was likely or probable; (Finding number 11 in district court opinion.)

(3) there is no evidence of willful or malicious failure to guard or warn against a dangerous condition, or of willful or wanton conduct on the part of the defendants. (Findings number 12 and 13 in district court opinion.)

It is contended by the plaintiff, Mandel, that the evidence presented to the district court created a genuine issue of material fact as to the willfulness or maliciousness of the United States in failing to guard or warn against a dangerous condition, thereby precluding the issuance of summary judgment. We agree.

There was undisputed evidence that no warning was posted at the Mud Cave swimming hole. It was also undisputed that neither defendant had knowledge of the particular submerged rock. One of the park rangers, however, testified that he knew that submerged rocks were all up and down the river. A National Park Service brochure warned of the danger of submerged rocks. Both a National Park Service employee and a National Park Service Ranger testified that they were aware of the hazards of submerged rocks in the river. There was undisputed testimony that Mud Cave was a very popular swimming area.

Mandel testifies to the specific recommendations of the Mud Cave swimming hole by a National Park Ranger who told him "that is where everybody goes and that is where we recommend for you to go." We believe that this evidence, together with the knowledge of the National Park Service of the existence and hazard of submerged rocks up and down the river, and the National Park Service's failure to know or warn of the submerged rock on which Mandel struck his head, when considered in the light most favorable to appellant, permits the following inferences to be drawn:

(1) The National Park Service would have reason to know of submerged rocks in the swimming area they were recommending;

(2) The National Park Service would have reason to believe that an injury was foreseeable, likely or probable; and

(3) The recommendation, with knowledge of the presence of rocks generally, and without knowledge of the rocks in Mud Cave, was a willful and wanton failure to warn against the dangerous condition.

In reaching factual findings contrary to these inferences we believe to be justifiable, the district court erred.

Arkansas defines willful and wanton conduct as that which "shows an utter indiffer-

ence to or conscious disregard for the safety of others." (Arkansas Model Jury Instructions 1101). Willful misconduct is defined as the doing or omitting to perform acts "with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom." *Steward et al. v. Thomas,* 222 Ark. 849, 853, 262 S.W.2d 901, 904 (1953). Recommending the swimming area with knowledge generally of the existence of rocks in the river and the resulting hazard, and without knowledge of the presence of rocks in Mud Cave, permits an inference and would support a factual finding of utter indifference to or conscious disregard for the safety of others. It could reasonably be inferred and found that such conduct is the commission of an act with knowledge or appreciation that danger is likely to result therefrom.

We are further fortified in our conclusion by Restatement (Second) of Torts § 310 which provides that

An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or a third person in reliance upon the truth of the representation, if the actor

(a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and

(b) knows

(i) that the statement is false, or

(ii) that he has not the knowledge which he professes.

According to Comment b of the Restatement (Second) of Torts § 310 the rule in § 310 applies where the misrepresentation is made concerning the physical condition of a place or thing and induces the person to believe that the place or thing is in safe condition for his entry or use. In this case, the National Park Ranger recommended the Mud Cave swimming hole to Mandel without knowledge as to whether the swimming hole was safe. On the basis of the ranger's recommendation, Mandel went swimming in Mud Cave and suffered permanent physical injury as a result. Although here we are dealing with a recommendation of a swimming hole without knowledge of its condition rather than a misrepresentation, we believe the Restatement principle would apply to the ranger's recommendation.

The district court failed to view the evidence in a light most favorable to the plaintiff when it concluded as a matter of law that there was no evidence of willfulness or maliciousness on the part of the defendant United States of America. In making this judgment the court made a choice of inferences to be drawn from the facts presented by both parties, "a choice which is impermissible on a motion for summary judgment." *Westborough Mall, Inc. v. City of Cape Girardeau, Missouri,* 693 F.2d 733, 742 (8th Cir.1982); *United States v. Diebold,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). In *Diebold* the Supreme Court held that a case is not suitable for summary judgment where there are undisputed facts from which different ultimate inferences might reasonably be drawn and as to which reasonable persons might differ. 369 U.S. at 655, 82 S.Ct. at 994.

We believe the district court erred in concluding at this stage of the proceedings that the conduct of United States did not constitute willful or malicious failure to guard or warn against a dangerous condition. From the evidence presented there are different inferences that might reasonably be drawn. We believe that such inferences, when considered in the light most favorable to the plaintiff, preclude a grant of summary judgment for the defendant United States. Therefore the district court's grant of summary judgment for the United States was improper.

■ We affirm the grant of summary judgment as to defendant Insurance Co. of North America, insurer of former defendant Boy Scouts of America. We agree with the finding of the district court that there is no evidence of willful or malicious conduct on the part of the Boy Scouts of America. It was a National Park Ranger, not a member of the Boy Scouts, who recom-

mended the Mud Cave swimming pool to Mandel.

Therefore, since there is no genuine issue of material fact in regard to the conduct of the Boy Scouts of America, the grant of summary judgment for the defendant Insurance Co. of North America is affirmed. The district court's grant of summary judgment for the defendant United States is reversed and remanded for further proceedings not inconsistent with this opinion.

McMILLIAN, Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion's holding that the Arkansas Recreational Use Statute is applicable to the United States. I also concur in the affirmance of the grant of summary judgment for the Insurance Co. of North America.

I do not concur, however, in the reversal of the district court's grant of summary judgment for the United States. I do not agree that appellant's evidence, when viewed in the light most favorable to appellant as the non-moving party, has created a genuine issue of material fact as to the willfulness or maliciousness of the United States in failing to guard or warn against the danger of submerged rocks. I would therefore affirm the grant of summary judgment in favor of the United States.