**RAY E. FRIEDMAN & COMPANY, a corporation, Appellee,**

v.

**Brent Thomas JENKINS, individually and d/b/a Jenkins Stock Farms, Appellant,**

**Clark J. JENKINS, J. Bruce Person, Casselton State Bank, a North Dakota banking corporation and the First Bank of North Dakota, Fargo, a National Banking Assoc.**

v.

**Brent Thomas JENKINS, Appellant,**

v.

**RAY E. FRIEDMAN & COMPANY, Appellee.**

**Calen Nettum.**

**No. 83–2008.**

United States Court of Appeals, Eighth Circuit.

Submitted June 11, 1984.

Decided June 28, 1984.

Rehearing Denied July 30, 1984.

Ronald H. McLean, Paul F. Richard, Tenneson, Serkland, Lundberg, Erickson & Marcil, Ltd., Fargo, N.D., for appellee Ray E. Friedman & Co.

Dorsey & Whitney, James H. O'Hagan, P.A., James B. Lynch, Minneapolis, Minn., for appellant Brent Thomas Jenkins; Lamb, Schaefer & McNair, Ltd., Michael D. McNair, Fargo, N.D., of counsel.

\* The Honorable Edward Dumbauld, United States Senior District Judge for the Western District of Pennsylvania, sitting by designation.

1. Other aspects of the case, involving other parties, have been severed and are not of interest on this appeal.

2. 7 U.S.C. § 6b makes it unlawful in connection with any sale for or on behalf of another person "to cheat or defraud or attempt to cheat or defraud such other person."

Before LAY, Chief Judge, and Arnold, Circuit Judge, and DUMBAULD \*, Senior District Judge.

DUMBAULD, Senior District Judge.

Judgment was entered by the District Court on December 1, 1982, against appellant Brent Jenkins in the amount of $264,-748.71 (plus post-judgment interest at the rate of 9.07 per cent). This sum represented a directed verdict for plaintiff-appellee Ray E. Friedman & Company, a commodity trading company, on an admitted debit balance of $224,280 (plus pre-judgment interest at 6 per cent from March 31, 1978, to December 1, 1982, less $22,428 awarded by jury verdict on a counterclaim by Jenkins).[1]

■ The counterclaim alleged that plaintiff had violated the Commodity Exchange Act[2] by "churning"[3] and by unauthorized trading.[4] Jenkins also asserted common law claims of negligence, breach of fiduciary duty, and breach of the customer contract between plaintiff and defendant.

The trial court, in accordance with the traditional fraud rule, charged the jury that violation of 7 U.S.C. § 6b must be proved by clear and convincing evidence. (Instructions 16 and 17). This may conflict with the philosophy behind a subsequent Supreme Court decision in *Herman & McLean v. Huddleston*, 459 U.S. 375, 103 S.Ct. 683, 690–92, 74 L.Ed.2d 548 (1983), holding that the preponderance of evidence rule applies in the statutory commercial fraud prohibition contained in Sec. 10(b) of the Securities and Exchange Act [15 U.S.C. § 78j(b) ].

3. "Churning" is the term commonly used to describe "excessive trading in order to generate commissions" for the broker, and constitutes a violation of the Act. *Johnson v. Arthur Espey, et al.* 341 F.Supp. 764, 765, 766 (S.D.N.Y.1972)

4. Intentional execution of transactions not authorized by the customer is a violation of the Act. *Haltmier v. Commodity Futures Trading Commission*, 554 F.2d 556, 557, 560 (2d Cir. 1977).

■ However, we believe that the District Court was correct in holding that this would have been harmless error, since the same acts constituting violation of the federal statute were also alleged as common law breach of contract, with respect to which the trial court charged in accordance with the preponderance of evidence standard. (Instructions 18 and 19). Since the quantum of damages in dollars would have been the same under either allegations of wrongdoing, no harm to Jenkins could result if the Commodity Exchange Act charge was erroneous.

■ The harmless error rule applies to incorrect instructions regarding burden of proof. *Locke v. Kansas City Power and Light Co.*, 660 F.2d 359, 365 (8th Cir.1981).

■ The same principle disposes of appellant's objection to prejudgment interest, if the trial court misapplied North Dakota law (which adopts the rule *certum est quod reddi potest* ).[5] Appellant argues that the amount due on the debit balance did not become certain until the jury determined the amount Jenkins was entitled to under the counterclaim. But the interest attached to the *debit balance* and fell due when Jenkin's obligation for that amount was perfected. In any event, the interest from that date was due under the terms of the customer contract (Transcript, I, p. 69). The jury's award on the *counterclaim* was correctly deducted by the trial court's judgment from the amount owing by Jenkins under the contract.

■ Since the account was non-discretionary and controlled by Jenkins, there is likewise no merit in his contention that an instruction on fiduciary duty should have been given. "He was a sophisticated, reckless trader who gambled big and lost," as the District Court summarized the case.

■ Likewise the exclusion of the belatedly proffered testimony of Professor Reynold P. Dahl as an expert witness on matters substantially amounting to questions of law or of jury issues was within the scope of the trial court's discretion, which was not abused under the circumstances of the case. *Strong v. E.I. Dupont de Nemours Co., Inc.*, 667 F.2d 682, 685–86 (8th Cir.1981).

Finally, Jenkins argues that since the jury found damages in his favor in the amount of $22,428, it must have found breach of contract or violation of exchange rules as to margin by appellee, and that such wrongful conduct constituted a complete defense to appellant's obligation to pay what he owed on the debit balance on his account.

■ However, upon comparison of the relative magnitudes of the amounts involved, it can not be sensibly said that appellee's breach was so "material" as to exonerate Jenkins completely from his obligations under the contract. In that connection, "Jenkins concedes that technical breaches of customer agreements should not automatically excuse a customer from satisfying a debit balance in a commodity futures trading account" (Brief, p. 34). To the same effect see *Merrill Lynch &c. v. Brooks*, 548 F.2d 615, 616–17 (5th Cir.1977).

The cases cited by Jenkins regarding North Dakota law do not support the sweeping proposition which appellant urges. In *Kupfer v. McConville*, 35 N.D. 622, 636, 161 N.W. 283 (1917), there was a complete failure by plaintiff to perform conditions precedent to its right to recover on a contract for digging a well. In *U.S. v. Am. Employer's Ins. Co.*, 192 F.Supp. 873, 877 (D.N.D.1961), it was held that a federal tax lien did not attach to "property" in sums due to a defaulting subcontractor. These cases do not establish a complete defense for Jenkins in the situation involved in the case at bar.

■ Jenkins had been in the habit of speculating on a large scale, and had been reasonably prompt in paying up the large amounts of additional margin required (Tr. III, 22, 42). That he was permitted the indulgence of substantial arrears for sever-

5. N.D.Cent.Code Sec. 42–03–04.

al weeks (Tr. III, 36) does not exculpate him from paying what he owed.

For the foregoing reasons the judgment of the District Court is affirmed.